**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE:      LINDSAY N. FARIS
              RENEE M. FARIS
              Debtor(s).                  Case No.: 3:16-bk-04578-JAF
                                              Chapter 13

_____/

LINDSAY N. FARIS
RENEE M. FARIS

              PLAINTIFF(s)                  Adv. No. 3:20-ap- 0153
      v.

SN SERVICING CORPORATION
              Defendant
_____/

**RESPONSE TO MOTION TO DISMISS COMPLAINT (DOC.#6)**

      LINDSAY N. FARIS and RENEE M. FARIS ("FARIS" or the "Plaintiffs") respond to the

Motion to Dismiss (Doc. #6) their Complaint filed by SN SERVICING CORPORATION. ("SN

SERVICING" or Defendant) and state:

**SUMMARY OF RESPONSE**

      SN SERVICING has filed its Motion to dismiss the Complaint of the Plaintiffs. SN SERVICING

never addresses the merits of Plaintiffs' Complaint in its Motion to Dismiss. SN SERVICING never

denies that the mortgage account was $5,992.70 delinquent as of the date of discharge (See Doc. #1,

Complaint; Page 9 of 11. Instead, as the basis for its Motion, SN SERVICING has claimed that the

Complaint should be dismissed due to the Defendant not misapplying the Plan payments as indicated in

the Confirmation Order, that there was disclaimer language in the statements provided to FARIS and

lack of a bad faith allegation. According to the Motion to Dismiss, 11 U.S.C. § 524(i) creates no remedy

1

through the contempt enforcement of the discharge injunction against a mortgage servicer which has misapplied plan payments and created a post discharge mortgage arrearage. The Motion has no basis in law and is due to be denied by the Court as stated below.

## FACTUAL BACKGROUND

Plaintiffs filed this Adversary Proceeding as a contempt action pursuant to 11 U.S.C. §§ 105, 524(i) and 1328 and for injunctive relief to prohibit future violations of the Bankruptcy Code by the Defendant.

The following statements were alleged in the Complaint and should be accepted as true:

1. On or about April 16, 2004, the PLAINTIFFS executed a promissory note ("Note") and mortgage in favor of Beneficial Florida, Inc. in the principal amount of $133,673.04 secured by the home at 3777 Woodbriar Dr., Orange Park, FL (the "Woodbriar Property"). The loan was eventually assigned to SN SERVICING as detailed below.

2. The Note was originally setup as a variable rate loan/mortgage for a period of thirty (30) years. The loan was due to mature on April 16, 2034.

3. On December 16, 2016, the PLAINTIFFS commenced the main Chapter 13 case by the filing of a voluntary petition with the Clerk of this Court. At the time of the filing, the Woodbriar mortgage was in arrears on payments to SN SERVICING.

4. On April 24, 2017, SN SERVICING filed Proof of Claim #12-1 as a claim in the amount of $131,473.55 secured by the Woodbriar Property. The arrears claimed as a result of the Proof of Claim was a default in the total amount of $5,150.01.

5. On February 13, 2017, PLAINTIFFS filed their Second Amended Plan of Reorganization (the "Plan"; Docket No. 36 in the Main Case) and provided for the Proof of Claim #12-1 in the Plan by paying regular payments in the Proof of Claim during the Plan.

6.   On April 26, 2017, the Court entered an Order Confirming Chapter 13 Plan (the "Confirmation Order"; Docket No. 46). This Confirmation Order was later modified by the Court's Order Granting Motion to Modify Confirmed Plan at Docket No. 63. The Modified Plan provided the amount of $5,150.55 towards the SN SERVICING arrears as claimed in Proof of Claim #12-1.

7.   The Confirmation Order as modified provided for the Woodbriar property/SN SERVICING as follows:

    a.   PITI Payment of $829.91 during months 1-60 subject to interest/escrow adjustments;

    b.   Cure of arrears of $5,150.55 during months 1-60;

8.   In all respects, the PLAINTIFFS have complied with the terms and payments due pursuant to the Confirmed Plan. The PLAINTIFFS have also complied with all post-confirmation notices regarding payment changes filed by the servicers.

9.   SN SERVICING was represented by Counsel in the Chapter 13 case and participated in the Plan process. See Docket No. 96.

10.  Subsequent to the confirmation order, the Woodbriar loan was transferred to SN SERVICING by SN SERVICING. See Docket No. 95, October 22, 2019.

11.  The Court entered an Order Discharging the Chapter 13 case on September 8, 2020. *See* Docket No. 118 in the Main Case.

12.  After the Discharge of the Chapter 13 case, the PLAINTIFFS had resumed making the required monthly mortgage payments to SN SERVICING on the Woodbriar property in September of 2020 (See Exhibit 2 to Complaint showing $2,041.05 paid by FARIS after 10/29/2020).

13.  The Exhibit 2 November 25, 2020 statement sent by SN SERVICING to the PLAINTIFFS, reflected a default of over $5,200.00 on post-petition payments despite the payments made since October 29, 2020.

3

## STANDARD OF REVIEW ON MOTION TO DISMISS

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim are not enough and the district court need not give any credence to legal conclusions that are not supported by sufficient factual material. *Id.* District courts must accept all well-pleaded allegations within the complaint and any documents attached thereto as true and read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

Plaintiffs have met the above standard to survive a Motion to Dismiss. The Complaint alleged a failure to apply payments in accordance with the terms of the confirmed Plan and discharge. As seen below, such conduct would have violated the statutory requirements of 11 U.S.C. § 524(i). The Complaint then attached supporting evidence in the form of multiple statements from SN SERVICING as the current servicer, which showed that the mortgage account was considered over $5,200.00 delinquent as of the date of the discharge.

Plaintiffs have factually and legally complied with the above Supreme Court dictates in order to survive the Motion to Dismiss.

## DEFENDANT'S BASIS FOR DISMISSAL OF COMPLAINT

**1.  The Disclaimer Language is not a basis for dismissal**

SN SERVICING has moved for dismissal of the Complaint on the grounds that SN SERVICING does not believe that there exists an injunction against a mortgage servicer misapplying plan payments

based on disclaimer language in the regular mortgage statements. See Motion to Dismiss; Doc. #6; Page

6 of 9. Defendant believes that the disclaimer language contained in the monthly statements means that

Plaintiffs should just accept that they never cured the pre-petition arrears on their mortgage despite the

maintenance of regular mortgage payments and a cure of all pre-petition arrears through the Chapter 13

plan. Heading C on Page 7 of 9 of the Motion to Dismiss filed by SN SERVICING states:

> Defendant's actions of sending the statements were not an attempt to collect a debt and thus, did
> not violate the discharge injunction. The August and September mortgage statements included a
> disclaimer in bold, acknowledging the bankruptcy and stating the statements are for "information
> and compliance purposes" and "not an attempt to collect a debt".

See Doc. #6, Motion to Dismiss, Page 7, ¶ 1.

According to the Motion to Dismiss, the above disclaimer language essentially nullifies the language

in 11 U.S.C. § 524(i) dealing with creditor misapplication of payments during the course of a Chapter

13 plan. SN SERVICING appears to have conflated the misapplication of payments provisions of sec.

524(i) with the mortgage communications safe harbor provisions of sec. 524(j). Courts should avoid

statutory interpretations that render Congressional Statutes meaningless. *Woodfork v. Marine Cooks &*

*Stewards Union*, 642 F.2d 966, 970-71 (5th Cir. Apr.1981) ("A basic principle of statutory construction

is that a statute should not be construed in such a way as to render certain provisions superfluous or

insignificant." (internal quotations and citations omitted)).

The two statutes have different purposes and regulate different creditor conduct through the statutory

scheme in sec. 524.

11 U.S.C. § 524(j) provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the
> holder of a secured claim, if—
> (1) such creditor retains a security interest in real property that is the principal residence
> of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and

(3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j)(2017).

The above requirements are conjunctive and all must be satisfied for the exception to apply. *Best v. Nationstar Mortgage LLC* (*In re Best*), 540 B.R. 1, 10 (B.A.P. 1st Cir. 2015).

In the present case, there is no dispute that SN SERVICING holds a secured claim with respect to the homestead real property of the Debtors. Accordingly, the only remaining issues are whether the Complaint's allegations that the Defendant misapplied the payments of the Chapter 13 trustee to the mortgage account were: (1) in the ordinary course of business between the creditor and the debtor; (2) limited to seeking periodic payments; (3) in lieu of pursuit of *in rem* relief to enforce the lien; and (4) not improperly coercive under the totality of the circumstances. *Ladebush v. Ben. N.H., Inc.* (*In re Ladebush*), 2016 Bankr. LEXIS 516 *20-21.

The actions of SN SERVICING in misapplying the Chapter 13 payments to the mortgage account fail all of the above requirements. The misapplication of payments during a bankruptcy case, subsequent dispute of the account status by the Plaintiffs after discharge and sending of multiple statements attempting to collect cured arrears as a result of a disputed payment application process would be well outside the ordinary course of any normal mortgage relationship between SN SERVICING and the Plaintiffs. Finally, the attempt to collect by SN SERVICING was as to the allegedly past due fees and payments which had been added to the lien amount by SN SERVICING. There was no assertion that such a collection tactic or notice was being performed by SN SERVICING to collect ordinary payments in lieu of any allowed *in rem* relief.

Instead, sec. 524(j) was designed to shield creditors from suits based on a discharge violation when a creditor attempts to engage a discharged debtor in order to save a home through modification or

informational statements regarding the amount necessary to voluntarily bring a loan current. See

*Ladebush*, *21-23 (Discussing regular monthly statements, in person inspections, modification attempts

and phone calls covered by the safe harbor provision.).

**2. The Disclaimer Language does not overrule 11 U.S.C. § 524(i) since SN SERVICING**

   **Misapplied Payments**

   In support of it's Motion to Dismiss, SN SERVICING cites to disclaimer language contained in

the Exhibits 1 and 2 attached to the Complaint. SN SERVICING then cites to the 11th Circuit Case of *In*

*re Roth*, 935 F.3d 1270 (11th Cir. 2019) for the proposition that the disclaimers prevent FARIS from

claiming a discharge violation pursuant to 11 U.S.C. § 524(i). However, the *Roth* case is factually not

relevant to the Court's decision in the FARIS Complaint.

   In this FARIS complaint, the Plaintiffs have alleged a violation of 11 U.S.C. § 524(i) for

misapplication of confirmed plan payments. In contrast, *Roth* dealt with a property surrendered through

the confirmed plan. As stated by the 11th Circuit in its opening factual recitation:

> "On her bankruptcy schedule, Roth listed a mortgage on non-homestead property, which
> is at issue here. On this schedule, she indicated she would surrender the property. The
> Chapter 13 plan provided that '[s]ecured creditors, whether or not dealt with under the
> Plan, shall retain the liens securing such claims.' On October 3, 2011, the bankruptcy
> court entered an order confirming her Chapter 13 bankruptcy plan."

*Roth*, 935 F.3d at 1273.

   The 11th Circuit then went on to do an analysis of whether the statements sent by the mortgage

servicer were an attempt to collect on the personal liability of the debtor after a Chapter 13 discharge

pursuant to 11 U.S.C. § 524(a)(2) or whether the statements were merely informational. *Roth* at 1276.

Ultimately, a combination of factors, including the disclaimer language included on the statements, led

the Court to conclude that the sending of the statements was not an attempt to collect on the personal

liability of the Debtor after surrender of the property and then discharge. SN SERVICING has taken the *Roth* analysis of collection against personal liability and has attempted to portray that as a blanket prohibition on attempting to enforce misapplication of payments during a confirmed Chapter 13 Plan.

In contrast to a safe harbor for regular correspondence and interaction with a mortgage servicer post-discharge, 11 U.S.C. §524(i) specifically deals with the misapplication of payments by a creditor during the course of a Chapter 13 plan which results in a claimed arrearage upon discharge. That subsection of the statute deals specifically with the conduct of SN SERVICING in the Chapter 13 case and formed the basis of the Complaint.

11 U.S.C. § 524(i) provides as follows:

> (i) The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i)(2017).

Based on the plain language of the Statute and the above, the following elements need to exist to find a § 524(i) violation:

1. There is a confirmed Plan which has not been revoked or is in default;

2. There is a discharge in the case;

3. The creditor failed to properly apply payments as required by the Plan;

4. The failure to apply the payments correctly was willful; and

5. The Debtor suffered material injury as a result.

Each and every element is met in this case against SN SERVICING as seen below.

1. The Confirmation Order is still in effect and the Plan is not in default.

It is unquestioned that the Order Confirming the Plan has not been revoked. The Plan is also not in default and SN SERVICING has not claimed in its Motion to Dismiss that there was any post-petition default by FARIS with respect to the Plan payments.

2.    There is a discharge in the Case.

Discharge was entered by the Court on September 8, 2020. *See* Docket No. 118 in the Main Case. That Discharge is still in effect and has not been revoked.

3.    The creditor failed to properly apply payments as required by the Plan.

The FARIS complaint has shown that SN SERVICING has willfully failed to apply Plan payments to the account properly. Exhibit 1 of the Complaint showed that both pre-discharge and post-discharge, the FARIS loan was delinquent. See Doc. #1; Pages 8-9 of 11 showing post-petition delinquency of $4,936.34 as of August 26, 2020 statement and $5,992.70 as of September 25, 2020 statement. Both statements also show only $137.53 of payment towards the pre-petition arrears during the course of the Chapter 13 plan.

It is clear what happened next. Shortly after the discharge on September 8, 2020, SN SERVICING took the post-petition and post-discharge payments made by FARIS and then applied them to the pre-petition arrears. That resulted in Exhibit 2, the November 25, 2020 statement showing a post-discharge default of $5,247.01.

The mortgage account should have been current on the date of the discharge or brought current within a reasonable time by SN SERVICING if payments had been applied according to the Plan. Accordingly, the Defendant has not applied the payments made by FARIS to the account in accordance with the confirmed Plan. See In *re Carlton* 437 BR 412, 428 (Bankr.N.D.Ala.2010) (Footnote 19)  "For example, Section 524(i) would prohibit a creditor holding both secured and unsecured claims from crediting payments to unsecured claims that were specified in

the plan for application to a secured claim; or more apropos, from applying payments earmarked for post-petition mortgage payments to prepetition arrears. The critical point is that the accounting to determine whether Section 524(i) has been violated comes at the end of the chapter 13 plan after all plan payments have been made, not during the case. If a debtor discovers during the chapter 13 case a creditor's internal accounting is not crediting payments as specified in the plan, Section 524(i) provides no immediate remedy. Indeed no remedy is needed until completion of the plan, at which time the creditor must 'true-up' its accounting to reflect that payments were applied in compliance with the plan."

4.  The failure was willful.

SN SERVICING attempts on Page 8 of its Motion to Dismiss that FARIS failed to allege bad faith as required for a discharge violation. Instead of bad faith, however, the statutory language required willful conduct by the Defendant. As seen below in the *Collier's* quotation, SN SERVICING intended to credit the payments in the incorrect manner and that suffices for the willful failure to apply in accordance with the confirmed Plan.

The provisions of § 524(i) do not require a bad faith standard. Instead, the statute provides that the Court can find a discharge violation for "The willful failure of a creditor to credit payments received under a plan". In this case the Complaint alleged as follows:

25. The actions of SN SERVICING were willfull and in full knowledge of the existence of the discharge provisions of the Bankruptcy Code.

Collier's on Bankruptcy has interpreted the above language as follows:

Section 524(i) is a response to decisions in which courts questioned whether they had the ability to remedy a creditor's failure to credit payments properly. For example, it provides a remedy that the Court of Appeals for the Eleventh Circuit found missing in *Telfair v. First Union Mortg. Corp.* when a chapter 13 debtor challenged a creditor's application of plan payments to charges not contemplated by the plan. It also makes clear that a failure to properly credit plan payments that results in a post-discharge assertion that the debtor is in default is not simply a matter for

state courts to resolve, but rather a critical issue that must be resolved by the bankruptcy court to ensure that the provisions and purposes of a plan are effectuated. . . .

The willfulness requirement of section 524(i) should not be a significant obstacle for debtors. As in section 362(k)(1), willfulness should be interpreted to mean simply that the creditor intended to commit the act, i.e., credit the payment in the manner it did; the debtor should not need to prove that the creditor intended to violate the Code or the plan provisions. Absent a creditor's proof that the improper crediting was a mistake in conflict with the creditor's normal procedures, the creditor should be presumed to have intended its acts.

Collier's Chapter 5 BANKRUPTCY CODE, Creditors, the Debtor, and the Estate, Subchapter II Debtor's Duties and Benefits, Chapter 524 Effect of Discharge, 4-524 Collier on Bankruptcy P 524.08 (2016).

5.   The Debtor has suffered material damages.

SN SERVICING then goes on to allege in its Motion to Dismiss that the Complaint should be dismissed due to the failure to allege actual damages. See Motion to Dismiss; Doc. #6; Pages 8-9. Again, the material injury requirement is easily satisfied by FARIS showing that the account was due for $5,247.01 in the November 25, 2020 statement due to the misapplication of the plan payments by SN SERVICING.

*Colliers* has addressed the material injury requirement as follows:

Similarly, the material injury requirement will be met in virtually every case involving a secured creditor, because the failure to properly credit payments will almost always result in a higher payoff balance for the debtor and therefore a larger lien on the debtor's property than if the payments were credited properly. A creditor that has collected the payments made by the debtor under the plan and credited them in a manner leading to a higher balance remaining on a debt has caused a material injury to the debtor. A common example of such injury is the assessment of postpetition charges to the debtor that are not in accordance with the terms of the confirmed plan. Obviously, if a creditor could subvert the terms of a plan simply by adding such charges, the cure of a default under the plan would be meaningless.

Collier's Chapter 5 BANKRUPTCY CODE, Creditors, the Debtor, and the Estate, Subchapter II Debtor's Duties and Benefits, Chapter 524 Effect of Discharge, 4-524 Collier on Bankruptcy P 524.08 (2016).

**CONCLUSION**

Plaintiffs have clearly met their burden to survive a Motion to Dismiss by the Defendant. Plaintiffs attached to the Complaint evidence which showed a pattern of violation of the Confirmed Plan and Discharge entered in the Chapter 13 case. Plaintiffs have been forced to expend resources and attorney's fees to correct the misapplication of the payments by SN SERVICING. Defendant has cited no authority that it may misapply every payment made by FARIS in their Chapter 13 case and not violate the discharge injunction. In fact, SN SERVICING did not choose to address the merits of the Plaintiffs' Complaint in its Motion to Dismiss. Plaintiffs would request that this Court deny the Motion to Dismiss and require the Defendant to file an Answer to the Complaint.

Law Offices of Mickler & Mickler, LLP

By:*/s/ Bryan K. Mickler*____
  Bryan K. Mickler Florida
Bar No. 091790
Attorney for Plaintiff
5452 Arlington Expressway
Jacksonville, FL 32211 (904)
725-0822 / FAX: 725-0855
bkmickler@planlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was furnished to:

GHIDOTTI | BERGER LLP
*Attorneys for Secured Creditor*
1031 N Miami Beach Blvd
Miami, Florida 33162
mfisher@ghidottiberger.com

By CM/ECF filing this ___24___ day of February, 2021.

/s/ Bryan K. Mickler
Attorney

13